IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CECILIA CANO-DIAZ, HECTOR BERNABE-LEON, JUAN VALDEZ-RUIZ, MARIA DE JESUS CASTANON-LOPEZ, RAFAEL ROMERO-GALVAN, RICARDO MAXIMINO-GONZALEZ, and NICOLAS GARRIDO-CARAPIA, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF ALABASTER, ALABAMA, CITY OF PELHAM, ALABAMA, CITY OF LEEDS, ALABAMA, and CITY OF IRONDALE, ALABAMA, <br><br> Defendants. | Case No.: 2:11-CV-3448-VEH |

## MEMORANDUM OPINION & ORDER

The court has examined the complaint in this action and finds that this action, brought by seven separate plaintiffs, is, in actuality, seven cases. Accordingly, pursuant to its authority under Fed. R. Civ. P. 21, the court finds that these cases should be severed into individual cases for each plaintiff.[1]

---

[1] Counsel for the parties were put on notice of the court's intention to sever this case into multiple suits by the court's statements to counsel on the record at the beginning of the motion hearing held on July 10, 2012.

**I.     Background**

This action was brought in federal court based on federal question jurisdiction, seeking injunctive relief against five separate Alabama municipalities for alleged unconstitutional activities. (Complt., Doc. 1 at 2). Plaintiffs filed their complaint on September 23, 2011, "individually and as representatives of a class or classes of person [sic] consisting of members of the Hispanic community of the subject municipalities." (*Id.* at 1). On February 16, 2012, on Plaintiffs' motion, the court dismissed without prejudice one municipality — the City of Hoover. (Motion To Dismiss, doc. 14; Order of Pro Tanto Dismissal, doc. 25).

Following the court's order requiring repleader (Doc. 28), on May 14, 2012, Plaintiffs filed their First Amended Complaint against the four remaining Alabama municipalities. (Doc. 29). In the First Amended Complaint, the seven individual plaintiffs are described as Hispanic men or women who reside in various counties of Alabama and "frequently visit[] or travel[] through municipalities where officers of the Defendant's [*sic*] police departments have been deployed and conduct traffic stops, frisks and make arrests." (Doc. 29 at ¶¶ 13–19). The Defendants are described as "municipal corporations organized and existing under the laws of the State of Alabama" (*id.* ¶ 20). Critically, although Plaintiffs allege that all the Defendants act in the same allegedly unconstitutional manner, Plaintiffs nowhere allege the existence

of any agreement among the Defendant to so act, nor do they allege that the Defendants act in concert with each other.

Generally speaking,

> Plaintiffs aver that the Defendants have implemented, enforced, encouraged and sanctioned a policy, practice and/or custom of suspicionless traffic stops and/or frisks in violation of the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment. This unconstitutional conduct is a direct and proximate result of policies, practices and/or customs of supervisory personnel within the Defendants' respective police departments as well as the elected Mayors and City Councils of the Defendants. These individuals have acted with deliberate indifference to the constitutional rights of those who would come into contact with police officers by: (a) failing to properly screen, train, and supervise police officers, (b) inadequately monitoring such officers and their stop and frisk practices, (c) failing to sufficiently discipline officers who engage in constitutional abuses, and (d) encouraging, sanctioning and failing to rectify the unconstitutional practices, (e) the explicit and tacit encouragement, sanctioning and ratification of and failure to rectify their respective police departments' rampant unconstitutional practices. Defendants knew or should have known that as a direct and proximate consequence of the policies, practices and/or customs described herein, the constitutional rights of thousands of individuals, particularly Black and Latino individuals, would be violated. Despite this knowledge, and with deliberate indifference to and reckless disregard for the constitutional rights of such individuals, Defendant municipalities have implemented, enforced, encouraged, sanctioned and failed to rectify such policies, practices and/or customs.

(*Id.* ¶ 28).

Based on these alleged facts, the Second Amended Complaint asserts five identical types of claims against all four Defendants: Fourth Amendment violations

pursuant to 42 U.S.C. § 1983 (Count I); Equal Protection Clause violations pursuant to 42 U.S.C. § 1983 (Count II); claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d), *et seq*. (Count III); claims for remedial relief predicated upon Defendants' past practices (Count IV); and claims for money damages pursuant to 42 U.S.C. § 1983 (Count V).

As to the putative class allegations, Plaintiffs describe the class they seek to represent as

> a class of legal and undocumented or "illegal" Hispanic immigrants/aliens who may have been or may be (a) illegally and discriminatorily stopped, searched, arrested and charged by the several municipal police departments and who have been convicted and sentenced by the Defendants' municipal courts; (b) required to pay exorbitant sums to the municipal courts in fines and costs of court; (d) [*sic*] subjected to racial profiling at the hands of the defendants['] police departments, and (e) otherwise deprived of rights, privileges and immunities secured by the Constitution of the United States.

(*Id.* ¶ 59). "Plaintiffs estimate that there are at least 8000 members of the class." (*Id.* ¶ 60). Issues alleged to be common to the class are described at Paragraph 61 and involve questions such as whether each municipality has established a pattern, practice, policy, procedure or custom pursuant to which Hispanic individual are subjected to discriminatory law enforcement, whether the police officials of each municipality have engaged in illegal racial profiling against Hispanic individuals, etc. (*See generally id.* ¶ 61).

In their Prayer for Relief, Plaintiffs seek the same five categories of relief against each Defendant municipality: for the court to issue a declaratory judgment; for the court to issue certain injunctive relief; to award Plaintiffs compensatory and punitive damages; to award Plaintiffs reasonable attorneys' fees; to award Plaintiffs costs of suit; and generally, for the court to award any other, further and different relief as the Plaintiffs may be entitled to receive in the interests of justice. (*Id.* at ¶¶ 28–31).

## II.  Legal Standards

The Federal Rules of Civil Procedure set out guidance for the parties and for the court concerning the proper alignment of parties to a civil lawsuit. Rule 20, titled "Permissive Joinder of Parties," provides:

> **(a) Persons Who May Join or Be Joined.**
>
> **(1) *Plaintiffs.*** Persons may join in one action as plaintiffs if:
>
>> **(A)** they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>>
>> **(B)** any question of law or fact common to all plaintiffs will arise in the action.
>
> **(2) *Defendants.*** Persons--as well as a vessel, cargo, or other property subject to admiralty process in rem--may be joined in one action as defendants if:

> **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> **(B)** any question of law or fact common to all defendants will arise in the action.
>
> **(3)** *Extent of Relief.* Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded. The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities.
>
> **(b) Protective Measures.** The court may issue orders--including an order for separate trials--to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party.

Fed. R. Civ. P. 20.

When parties are improperly aligned, the rules afford the district court wide discretion to correct the alignment, as evidenced by the court's power under Rule 20(b) to order separate trials in the interests of justice. Similarly, Rule 21, titled "Misjoinder and Nonjoinder of Parties," provides:

Misjoinder of parties is not a ground for dismissing an action. On motion *or on its own*, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

Fed. R. Civ. P. 21 (emphasis added). Pursuant to these rules, the trial court has "broad discretion to sever issues to be tried before it." *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994) (citing Fed. R. Civ. P. 21).

### III. Analysis

As explained on the record during the July 10, 2012, hearing, the court believes that this case should not proceed as one action. Parties may properly join together to bring a single action only if their claims arise out of "the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a). "Transaction is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *A.M. Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1323 (11th Cir. 2000) (citations omitted) (looking to Fed R. Civ. P. 13(a), governing compulsory counterclaims, in determining what constitutes a transaction or occurrence for the purposes of Rule 20(a)). Here, each Plaintiff's claims depend upon proof of facts that, although alleged to be parallel and motivated by the same animus, are not logically related. Each Plaintiff alleges that one or more law enforcement officials from one of the four municipalities at different times stopped or otherwise detained that Plaintiff. The officers cited different reasons for the detention of the various Plaintiffs. The Plaintiffs allege that each of them was individually harmed (by way of an alleged violation of constitutional rights) during those individualized detentions. Critically, there is <u>no</u> allegation that Defendants conspired together, or operated in conjunction or pursuant to any agreement, to deprive these various

individual Plaintiffs of their constitutional rights. The mere allegation of a similar grievance is not enough to create a common transaction or occurrence under the facts alleged in the Amended Complaint.

Additionally, the court finds that prosecution of all Plaintiffs' claims in one single action would most likely prejudice the Defendants, and would result in undue expense and delay. Furthermore, trial of these claims together would cause unnecessary jury confusion. Moreover, interests of judicial economy are not served by trying these cases together, since the court must deal with factually specific issues related to the elements of each constitutional claim, and the resultant damages, for each Plaintiff and each Defendant. From the court's perspective, the claims can be better managed in separate cases.

Having concluded that the claims of the seven Plaintiffs are misjoined because they do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences," Fed. R. Civ. P. 20(a)(1)(A), the court, on its own initiative, and in the interests of justice, will sever the claims pursuant to Fed. R. Civ. P. 21.

**IV.   Conclusion**

For the reasons stated above, the court **ORDERS** as follows:

1. The claim(s) of Plaintiff Cecilia Cano-Diaz will proceed in this action, numbered 2:11-cv-03448-VEH, against the City of Leeds, Alabama.

2. The Clerk of Court is **DIRECTED** to open a new case for each of the following plaintiffs as specified below:

   A. Hector Bernabe-Leon v. the City of Irondale, Alabama;

   B. Maria De Jesus Castanon Lopez v. the City of Pelham, Alabama;

   C. Rafael Romero-Galvan v. the City of Alabaster, Alabama;

   D. Nicolas Garrido-Carapia v. the City of Pelham, Alabama;

   E. Ricardo Maximino-Gonzalez v. the City of Alabaster, Alabama; and

   F. Juan Valdez-Ruiz v. the City of Pelham, Alabama.

   Accordingly, the Clerk of Court is **DIRECTED** to **TERM** all plaintiffs other than Cecilia Cano Diaz as party-plaintiffs in the present case, and to **TERM** all defendants other than the City of Leeds, Alabama as party-defendants in the present case.

3. Further, the Clerk of Court is **DIRECTED** to assign the newly opened cases to the undersigned.

4. The court will carry over all pleadings and filings to date to each of the new cases and will rule on any currently pending motions separately in each case.

5. Any future filings or pleadings must be filed in each individual case.

6. Finally, Plaintiffs Bernabe-Leon, Valdez-Ruiz, Castanon-Lopez,

9

Romero-Galvan, Garrido-Carapia, Maximino-Gonzalez, and Valdez-Ruiz **each** is **ORDERED** to pay his or her respective required filing fee to the Clerk of Court within twenty (20) days of the date of this Order.  **The failure of any plaintiff to do so will result in the dismissal of that plaintiff's case for want of prosecution.**

**DONE** and **ORDERED** this the 17th day of July, 2012.

                                        **VIRGINIA EMERSON HOPKINS**
                                        United States District Judge